THE STATE *ex rel.* BROWN v. KLEIN.

Division Two, May 30, 1893.

1. **Municipal Office**: ELECTION CONTEST: OPENING BALLOT BOXES. Under Revised Statutes of 1889, section 4706 as amended by the act of 1891 (Laws p. 106) the circuit court may, in a contested election case for a municipal office, issue a writ directing the opening of the ballot boxes.

| 116 | 259 |
| 128 | 340 |
| 116 | 259 |
| 65a | 554 |
| 116 | 259 |
| 68a | 396 |
| 116 | 259 |
| 84a | 288 |
| 116 | 259 |
| 164 | 39 |
| 164 | 40 |
| 164 | 41 |
| 116 | 259 |
| 93a | 76 |

2. ———: ———: ———. The statute does not require that the case shall be at issue when the order is made, but only that the contested election shall be pending.

3. *Prohibition.* A writ of prohibition is available only to restrain the exercise of jurisdiction by a court where none exists, and not its erroneous or irregular exercise.

4. ———. It will not issue where other adequate remedies exist, nor be made to perform the office of an appeal.

### *Prohibition.*

WRIT DENIED.

*Leverett. Bell* for relator.

(1) The notice of contest fails to indicate specifically and definitely the grounds on which the contestor intends to rely, and is too general in its character and is insufficient to support the application to open the ballot boxes and to examine and recount the ballots. McCrary on Elections, secs. 394, 400, 402, 404; Revised Statutes, secs. 4672, 4778; *Gumm v. Hubbard*, 97 Mo. 311; *Castello v. Circuit Court*, 28 Mo. 259; *Shields v. McGregor*, 91 Mo. 547. (2) The circuit court possessed no authority to make an order to examine the ballots prior to the June term, 1893, of said court, at which term the contestee, under the notice for the first time, is bound to appear in the proceeding. Revised Statutes, secs. 4706, 4708, 4721; State Constitution, sec. 3, art. 8. (3) Under the constitution and laws of this state the circuit court has no power, jurisdiction nor authority to cause the ballot boxes to be opened and the ballots to be counted and examined in an election contest over an office purely and exclusively municipal. State Constitution, secs. 3, 9, art. 8; *O' Connell v. Public Schools*, not yet reported; *State v. John*, 81 Mo. 13; *State v. Lobsinger*, 7 Mo. App. 106; Revised Statutes, secs. 4721–4726; *State v. Dillon*, 87 Mo. 487; *State v. Francis*, 88 Mo. 557; Laws

of 1891, p. 106; Revised Statutes, sec. 4706; Laws of 1883, p. 91.

*John P. Ellis* and *Ford Smith* for defendant.

(1) By the amendment of 1891 our legislature intended to supply the *casus omissus* pointed out in *Ewing v. Francis*, 87 Mo., and this purpose should be made effectual by giving such construction to the amendment as will remedy the defects intended by the legislature to be remedied. Amendment of 1891 (Acts 1891, p. 106); secs. 3, 9, art. 8, Missouri Constitution; *State ex rel. v. Ewing*, 87 Mo. 487; *State ex rel. v. Francis*, 88 Mo. 557; *Neenan v. Smith*, 50 Mo. 525; *Spilter v. Young*, 63 Mo. 42; *State v. Daveling* 66 Mo. 375; Smith's Commentaries [1 Ed.], p. 710, sec. 575; *ibid.* p. 671; *ibid.* sec. 547, p. 692. (2) The amendment of 1891 must be read as though originally a part of section 4706, when the latter section was placed in the Revised Statutes of 1879, (Revised Statutes, 1879, sec. 5528); that is, when the act of 1883 was passed authorizing the opening of ballots "in any contested election" (1 Revised Statutes, sec. 4721), it must be held to include the municipal contest added by the amendment of 1891, just as though the word "municipal" had been in Revised Statutes (1879), sec. 5528—five years before the act of 1883. Potter's Dwarris (1871), p. 190; Endlich Interpretation of Statutes., sec. 294; *Holbrock v. Nichols*, 36 Ill. 161; *Farrell v. State*, 24 Atl. Rep. 725; *People v. Sweetser*, 1 Dak. Rep. 308; *Conrad v. Nall*, 24 Mich. 277; *People ex rel. v. Circuit Judge*, 37 Mich. 287; *Kamerick v. Castleman*, 21 Mo. App. 587; *McKibben v. Lester*, 9 Ohio State, 627; *Queen v. St. Giles*, 3 Ellis & Ellis Rep. 224; *Louisville v. Commonwealth*, 9 Dana (Ky.), 70; *Jacoby v. Shafer*, 105 Pa. St. 610. (3) The rule of "*in pari materia*" applied to the construc-

tion of statutes, brings all the statutes on the same subject, whenever enacted, into one act and treats them as a whole, and this rule dispenses with the necessity, and even the propriety, of legislation stating that the different acts or amendments are mutual and interdependent.     Sutherland Statutory Construction, secs. 284, 288; *Farrell v. State*, 24 Atl. Rep. 725; *State v. Babcock* 33 N. W. Rep. (Neb.) 247; Potter's Dwarris, p. 189; *Linton's Appeal*, 104 Pa. St. 228; and cases cited under second heading, *supra*.

SHERWOOD, J.—This is an original proceeding in this court.   Upon a rule to show cause why he should not be prohibited from issuing a writ commanding that the ballot boxes in a certain election contest be opened, the Hon. Jacob Klein, a judge of the circuit court of the city of St. Louis, has made the following return: "That such writ should not issue because it appears by the relator's petition and by the copy of notice of contest and notice of application accompanying said petition, that under the statutes of the state of Missouri, relating to election contests and to the opening of ballot boxes, by order of circuit courts, that the respondent, as judge of the circuit court, city of St. Louis, before whom said election contest was and is pending, was and is duly authorized to issue a writ directed to the recorder of voters of the city of St. Louis, instructing him to open the ballot boxes, as asked for in the application of the contestor named in said notice of contest."

To this return relator demurs on the ground that it does not state facts, etc.

The truth of the return being admitted by the demurrer, the only issue presented for determination is the jurisdiction of respondent to order the opening of the ballot boxes.   The issue thus raised brings under

review certain constitutional and statutory provisions pertaining to the subject of such jurisdiction.

After providing for the secrecy of the ballot, section three of article eight of the constitution declares: "That in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law." Section nine of the same article commands that: "The general assembly shall, by general law, designate the court or judge by whom the several classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto,"

In obedience to the requirements of the organic law, the legislature passed a statute which conferred jurisdiction on the circuit courts "in cases of contested elections for county offices." 2 Revised Statutes 1879, sec. 5528; 1 Revised Statutes 1889, sec. 4706. By the act of 1883, laws of that year, page 91, now section 4721, Revised Statutes, 1889, authority was bestowed on "any court before which any contested election may be pending" to issue a writ to have the boxes opened. In *State ex rel. v. Dillon*, 87 Mo. 487, this court decided under the then existing laws that the circuit court of the city of St. Louis had no jurisdiction to try a contested election cause in regard to a *municipal office* of that city. In 1891, the general assembly enacted an amendment to section 4706 aforesaid, by inserting therein the words "*and municipal*," so that that section now reads: "The several circuit courts shall have jurisdiction in cases of contested elections for county and municipal offices," etc. (Laws 1891, p. 106).

The object of the amendatory act is quite plain, it. was evidently designed to supply a *casus omissus*, to confer jurisdiction on circuit courts where, under the former ruling of this court, none existed before, to-wit,

in regard to *"municipal"* offices. The only question therefore is: Did the amendment have the desired and intended effect, or did it fail of its manifest purpose? The statutory provisions already quoted evidently relate to one subject, and have but one object in view. The title of the laws as found in the Revised Statutes of 1879 and of 1889, is "Elections," and the act of 1883 already quoted is "An act to provide for counting, etc., ballots in cases of contested elections." And the act of 1891, before mentioned, is entitled "An act to amend section 4706, etc., in relation to elections." It is readily seen, therefore, from the titles of these acts, both original and amendatory, and the matters therein contained, that they are parts of one common system, and have in contemplation the effectuation of but one common object, to-wit: the conferring of jurisdiction on circuit courts in relation to certain offices and the regulation of the manner of the exercise of the jurisdiction thus conferred.

This being the case, the canon of construction is a familiar one, that: "It is to be inferred that a code of statutes relating to one subject, was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. It is therefore an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law; and they are directed to be compared in the construction of statutes, because they are considered as framed upon one system, and having one object in view. If one statute prohibit the doing a thing, and another statute be afterward made, whereby a forfeiture is inflicted upon the person doing that thing, both are considered as one statute. Where an action founded upon one statute, is given by a subsequent statute in a new case, everything annexed to the action by the first statute is likewise given. Indeed, the latter act may be

considered as incorporated with the former." Potter's Dwarris on Statutes and Constitutions, pages 189, 190.

Under the operation of this rule of *in pari materia* the amendment of 1891, became as indissolubly blended with the former acts as if it had been part and parcel of them; as much so as if it had been incorporated in the first instance in the original act which conferred jurisdiction on the circuit courts in relation to contested elections for "county" offices. This view is elsewhere expressed in a somewhat recent work of merit: "No doubt, a statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendments had always been there, and the amendment itself so thoroughly becomes a part of the original statute, that it must be construed in view of the original statute, as it stands after the amendments are introduced." (Endlich Interpretation Statutes, sec. 294.)

An author of recognized standing, in a late work touching the subject in hand, remarks: "Where enactments separately made are read *in pari materia*, they are treated as having formed in the minds of the enacting body parts of a connected whole, though considered by such body at different dates, and under distinct and varied aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws, and connect them in a symmetrical system. Such statutes are taken together and construed as one system and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and so far as

still in force brought into harmony, if possible, by interpretation, though they may not refer to each other, even after some of them have expired or been repealed. An amendatory act and the act amended are to be construed as one statute, and no portion of either is to be held inoperative if it can be sustained without wresting words from their appropriate meaning." Sutherland Statutory Construction, sec. 288.

As showing what acts are to be regarded as forming one system and therefore to be read together, the same author says: "A statute must be construed with reference to the whole system of which it forms a part. And statutes upon cognate subjects may be referred to, though not strictly *in pari materia*. There being a general statute regulating the execution of wills which did not require subscribing witnesses, a new statute was passed providing for the testamentary disposition of the property of married women; it required that such a will should be executed in the presence of two witnesses. The two acts were construed together. A married woman's will had to be executed according to the general law except in the particular regulated by the later act in respect to witnesses. * * * A statute authorizing the revival of actions by or against the representative or successor in interest of the party deceased is *in pari materia* with other statutes providing for the appointment of executors and administrators, and also those pointing out how foreign representatives may acquire the right to prosecute actions. A statute relating to homestead and exemptions for a family of minor children was held *in pari materia* with laws allowing dower to the widow and minor children. A statute in relation to attachments against steamboats and other water craft is *in pari materia* with the general attachment law, and they should be construed together." *Ibid.* sec. 284.

The industry of counsel for respondent has cited many cases announcing the same doctrine; it is needless to cite them in support of a principle of such universal recognition, and quotations would not have been made thus at large from the text-writers, but for the fact that upon the principle announced, this case must turn.

Under the authorities, the effect of the act of 1891, when it gave jurisdiction to circuit courts in respect to contested elections for "municipal" offices, was immediately to confer on such courts the same machinery for making that jurisdiction effectual as had already been bestowed on such courts in other election contests, by the act of 1883, to-wit, the power to open the ballot boxes. Without this power the grant of jurisdiction as to municipal contested elections would be a vain and useless thing; the grant of a barren and fruitless jurisdiction; something which it must be presumed the legislature did not intend to confer. Smith's Commentaries, sec. 527.

The rule which is applied to several acts in *pari materia*, and which requires them to be considered together as forming *one legal whole* is after all, but a rule ascertaining and carrying into effect the intention of the legislature. 1 Kent's Commentaries [13 Ed.], 463. It is based upon the same principle, that whenever a power is given by a statute, everything necessary to the making of it effectual or requisite to attain the end is implied. *Quando lex aliquid concedit concedere videtur et id, per quod devenitur ad illud.* *Ibid.* 464.

Upon the foregoing considerations, we hold that the various statutory provisions above quoted must be regarded as forming one harmonious whole; one act to all intents and purposes, which clothes the circuit court, over which respondent presides, not only with

jurisdiction to hear and determine contested elections for "municipal offices," but clothes it also with all necessary power to make that jurisdiction effectual by. ordering the opening of the ballot boxes.

It has, however, been urged that in any event jurisdiction to open the ballot boxes cannot be exercised in this particular instance for two reasons: *First,* because under the statutory provisions no order to open the ballot boxes can be made prior to the June term, at which the contest is to occur, or "until the case is at issue; *second,* because the notice of contest is insufficient by being too general and indefinite, etc.

Section 4721, *supra,* does not require that the case shall be "*at issue*" when the order to open the boxes is made; the only requirement is that the contested election shall be "*pending*" before the court which makes the order, and we have heretofore ruled that such contest is pending from the time that notice thereof is served upon the contestee. *State ex rel. v. Smith,* 104 Mo. 661.

As to the insufficiency of the notice of contest, it is enough to say that the writ of prohibition goes only to restrain the assumed exercise of jurisdiction where none exists, and not to its erroneous or irregular exercise. Wood on Mandamus and Prohibition, 147, 148, *et seq.; State ex rel. v. Court of Appeals,* 99 Mo. 216; *State ex rel. v. Burckhartt,* 87 Mo. 533. It cannot issue where other adequate remedies exist, nor be made to perform or usurp the functions of an appeal, etc. 19 American and English Encyclopedia of Law, 265, *et seq.,* tit: Prohibition. Besides, the insufficiency of the notice has not been put in issue by the pleadings, and we shall not assume in advance that the respondent will permit an insufficient notice of contest to receive

his judicial sanction, and should he do so the remedy of relator is ample in other directions.

The premises considered, we deny the writ. All. concur.